UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESLEY NEAL, Jr.,

        Plaintiff,        Civil Action No. 2:20-cv-12498

v.        Arthur J. Tarnow
        United States District Judge

N. FRONCZAK, *et al.*,        David R. Grand
        United States Magistrate Judge

        Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 16)

*Pro se* Plaintiff Wesley Neal, Jr. ("Neal"), an incarcerated person, brings this action alleging, principally, that he was denied access to the prison law library in violation of his constitutional rights. As defendants he names "N. Fronczak," Willis Chapman, and Mona Golson, who were each employed by the Michigan Department of Corrections ("MDOC") at the facility where Neal was housed during the time in question. On March 22, 2021, defendants Chapman and Golson (collectively "Defendants") filed a Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 16).[1] Neal filed a response, and Defendants filed a reply. (ECF Nos. 25, 28). An Order of Reference was entered on April 16, 2021, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b).

---

[1] While the motion indicates that it was filed only on behalf of defendants Chapman and Golson, as discussed below, they make clear that one of their arguments applies to all three defendants

(ECF No. 17).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.  RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 16)** be **GRANTED** and that Chapman and Golson be **DISMISSED** from this case.

## II.  REPORT

### A.  Background

Neal is a MDOC prisoner and was confined at the Macomb Correctional Facility ("MRF") in Lenox Township, Michigan at all times relevant to this action. Neal brings this civil action under 42 U.S.C. § 1983, alleging violations of his First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights. (ECF No. 1).

Neal alleges that he was improperly denied access to the prison law library at MRF in retaliation for threatening to file a grievance against the librarian, N. Fronczak, and that Defendants mishandled his initial grievance regarding that issue, and that he was thereafter "selectively targeted, singled out for the unreasoned harassment, retaliation, stalking, expulsion and corrupt misconduct" by Defendants and their "superiors and subordinates" to obstruct the advancement of his claims. (ECF No. 1, PageID.3). Neal alleges that his constitutional right to have access to law library use and to be free from harassment by

staff "have been hindered by unreasoned state activities without advancing a valid/rational state penological interest." (*Id.,* PageID.3, 4). Neal also claims that he was "forced to forgo advancement of his direct appeal [of his state conviction] and proper assistance with preparing his Federal Habeas Corpus brief and motion for the court." (*Id.*, PageID.4).

In his complaint, then, Neal alleges that, with regard to the grievances he filed, there exists "no rational valid penological intent in adopting bias partisan and corrupt, adverse measures to terminate a meritorious grievance on the merits without adequate due process of law." (*Id.*, PageID.2). Neal contends that when he filed a grievance against Fronczak, Defendants "upheld the sanctions while falsifying records and presenting perjured evidence to alter material facts favorable to this Plaintiff" and falsely denied his Step I grievance against Fronczak and marked it as resolved. (*Id.*, PageID.2, 3).

Defendants now move for summary judgment, arguing that Neal failed to properly exhaust his administrative remedies against them before filing the instant lawsuit. (ECF No. 28, PageID.217).

**B.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-

3

moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.  Analysis

In their motion, Defendants argue that summary judgment is warranted because Neal failed to properly exhaust his administrative remedies against them, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 16, PageID.90-99). The Court agrees.

#### *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other

4

Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being hauled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### The MDOC's Exhaustion Procedures

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 16-2, PageID.104). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id*. at ¶ Q).

5

In a Step I grievance, a prisoner must include a description of the issues "stated briefly but concisely" along with the "[d]ates, times, places, and names of all those involved in the issue being grieved." (Id., at ¶ S). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ DD). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ C).

Grievances may be rejected for myriad reasons, including if "the grievance is filled in an untimely manner" or if "the prisoner is grieving content of the policy of procedure." (*Id.* at ¶ J). Additionally, "if the grievance is rejected, the grievance response shall state the reason for rejection without addressing the merits of the grievance." (*Id.* at ¶ Y).

### *Neal Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted His Claims Against Defendants*

In their motion, Defendants argue that Neal did not properly exhaust his claims against them. At issue are two grievances filed by Neal – MRF-20-02-182-14e (the "MRF-182 Grievance") and MRF-20-05-730-28e (the "MRF-730 Grievance"), which he filed in that order.[2] As Defendants correctly represent, in the MRF-182 Grievance, in which Neal challenged Fronczak's decision to deny him access to the law library, "Neal named

---

[2] Defendants inadvertently switched the grievance identifiers for MRF-182 and MRF-730 during their discussion of the grievances on pages 8, 15, and 16 of their brief. (ECF No. 16, PageID.90 & 97-98.) The Court will refer to the grievances by the correct identifiers in its analysis.

6

Fronczak as the only individual being grieved at Step I, and Golson and Chapman were the Step I respondent and reviewer, respectively." (ECF No. 16, PageID.97).  Neal pursued the MRF-182 Grievance all the way through Step III, and Fronczak therefore appears to concede that it exhausted claims against him related to the specific issue raised therein.  However, Defendants argue that because they were not named in the MRF-182 Grievance, it did not exhaust any of Neal's claims against them.

In the MRF-730 Grievance, Neal challenged the Defendants' "allowing" defendant Fronczak to "incorporate an illegal custom of excessive unreasoned harassments," including the library expulsion that formed the basis of Neal's MRF-182 Grievance. (ECF No. 16-3, PageID.120).  He also accused them of "corrupting Administrative process to obstruct justice and access to Fundamental Fairness throughout the course of official proceedings," apparently related to the handling of the MRF-182 Grievance.  (*Id.*) Defendants admit that "Neal named Fronczak, Golson, and Chapman as the individuals being grieved at Step I but [they contend] that grievance was rejected at Step I and the rejections were upheld through Steps II and III,"[3] thus not exhausting claims against any defendant, including Fronczak. (*Id.* at PageID.97-98).  All three defendants thus argue that they should be granted summary judgment as to the claims raised in the MRF-730 Grievance because Neal did not properly exhaust those claims against them. (ECF No. 28, PageID.217).

---

[3] Although Defendants did not specify the reason for the rejection in their motion, the exhibits attached thereto make clear that this Grievance was rejected on the grounds that it was untimely. (ECF No. 16-3).

7

In response, Neal argues that he exhausted all administrative remedies because he "substantially complied with the institution's grievance policy" and "properly filed his grievance through all steps of the grievance procedure, fulfilling the exhaustion requirement of 42 U.S.C. 1997e(a)." (ECF No. 25, PageID.164-65). Additionally, Neal attempts to invoke "the hardship exception due to all Law library access is denied him due to Corona Virus, Covid-19 outbreak at the Macomb Facility where he reside[s]." (*Id.*, PageID.165).

For the reasons discussed below, Defendants' arguments have merit, and all of Neal's claims should be dismissed except for his claim against defendant Fronczak that was exhausted by the MRF-182 Grievance.

### *The MRF-182 Grievance*

As for the MRF-182 Grievance, Neal did not exhaust his claims as to the Defendants because they were not named in the Grievance. Rather, the Grievance is made only against defendant Fronczak. (ECF No. 16-3, PageID.120) ("grievance against Assistant Librarian N. Fronczak"). Because the Policy required that the "names of all those involved in the issue being grieved are to be included," Neal's failure to mention Chapman or Golson in the Grievance means it failed to exhaust any claims against them. (ECF No. 16-2, PageID. 107). Moreover, it would make no sense to say that the MDOC's consideration of the Grievance on its merits against Fronczak waived the exhaustion requirement as to Defendants because considering a grievance as it relates to a named alleged wrongdoer is in no way a failure to follow the MDOC's own grievance procedures. *See Ashley v. Boayue*, No. CV 19-10484, 2020 WL 5985203, at *7 (E.D. Mich. Feb. 18, 2020), report

8

and recommendation adopted, No. 19-10484, 2020 WL 4282198 (E.D. Mich. July 27, 2020) ("while the MDOC's decision to address [the inmate's] grievance against [a named wrongdoer] on the merits might permit him to overcome some other exhaustion shortcoming with respect to his claim against [that wrongdoer], it cannot be a basis for finding that [the inmate] exhausted a claim he did not make in the first place.").

For all of these reasons, Defendants are entitled to summary judgment as to any claims Neal now raises against them under the MRF-182 Grievance.[4]

*The MRF-730 Grievance*

In the MRF-730 Grievance, where the Defendants and Fronczak *are* named, Neal complained that Defendants had "allowed" Fronczak to expel him from the law library for 60 days, and that Defendants had "corrupting Administrative process to obstruct justice and access to Fundamental Fairness throughout the [grievance process]." (ECF No. 16-3,

---

[4] Moreover, although the Defendants focus solely on issues of exhaustion, Neal's claims against Defendants related to the MRF-182 Grievance are also subject to dismissal under 28 U.S.C. § 1915(e). Once a complaint is filed *in forma pauperis* under 28 U.S.C. §1915(a), the court must test its sufficiency under §1915(e). Pursuant to § 1915(e)(2)(B), a court "shall dismiss" a case at any time if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." As noted above, Neal's MRF-182 Grievance is made only against Fronczak. His claims related to Chapman and Golson merely accuse them of improperly handling the processing of that Grievance. Those claims are subject to dismissal pursuant to §1915(e) because the law is clear that merely responding to a grievance in a manner unacceptable to the grievant is not actionable under Section 1983. *See Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("'denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.'"); *Alder v. Corr. Med. Servs.*, 73 Fed.Appx. 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."); *Lee v. Michigan Parole Board*, 104 Fed.Appx. 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Diamond v. Jackson*, No. 15-P164, 2016 WL 411112, at *5 (W.D. Ky. Feb. 2, 2016) ("A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances.").

PageID.120). Neal concedes, however, that those issues occurred during the week of March 3, 2020, which aligns with when Chapman signed the Step II response form to the MRF-182 Grievance. (ECF No. 25, PageID.162) ("The true date of incident would be the week of March 3, 2020 which is the date that was last signed by Chapman on the Step II grievance response form.") Under the Policy, Neal was required to have filed the Grievance within five business days after the incident in question. (ECF No. 16-2, ¶ Q). However, Neal did not file the MRF-730 Grievance until May 5, 2020, more than 12 weeks after its due date. (ECF No. 16-3, PageID.115).

The MRF-730 Grievance was therefore rejected at Step I as being untimely. (*Id.*, PageID.121). That rejection was upheld at the remaining steps of the MDOC's grievance process. (*Id.*, PageID.117). Therefore, unless Neal can raise a material question of fact as to the propriety of the MRF-730 Grievance's rejection, this Grievance cannot exhaust any of the claims alleged therein. *Woodford*, 548 U.S. at 90 (holding that proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules.").

In response, Neal argues that the grievance process was unavailable to him for two reasons. First, he claims that between January 29, 2020, and March 28, 2020, he was suspended from the law library (which suspension was at the heart of his MRF-182 Grievance). (ECF No. 25, PageID.162-63). Second, he claims that "[a]fter the conclusion of [his] suspension from the law library, the [MRF] law library was closed to inmates due to Covid-19 outbreak." (*Id.*, PageID.163). These averments fail to raise a material question of fact as to whether the MDOC's grievance procedure was unavailable to Neal during the time in question.

10

Neal never asserts he requested a Step I grievance form, or that he was denied one. (*Id.*, PageID.162-63). Nor does he assert that those forms are only available within the law library. (*Id.*) Nor does he identify any other document or information necessary to filing a grievance that he could only obtain in the law library. Moreover, Neal asserts that he wrote a "Notice of Intent to initiate further actions to Defendants Chapman and Golson with questions that were not answered, but again, he makes no mention of having asserted an inability to obtain a Step I grievance form, and Neal did not provide a copy of his "Notice of Intent" to the Court. (*Id.*, PageID.163). Finally, Neal never indicates when the law library re-opened, or how or when he received the Step I grievance form he filed in May 2020.

Other evidence in the record also strongly supports the conclusion that Neal failed to raise a material question of fact as to the timeliness of his MRF-730 Grievance. After being advised that his Step I Grievance was rejected as being untimely, Neal tellingly did *not* assert he had been unable to obtain a Step I grievance form and/or file his MRF-730 Grievance any earlier. (ECF No. 16-3, PageID.118). Rather, in his "Reason for Appeal" of the Step I rejection, Neal simply wrote, "Grievance not resolve [sic] at Step I." (*Id.*) And, after the rejection was upheld at Step II, Neal appealed at Step III, writing simply that, "The state not federal Constitution placed a time line on filing a valid petition for redress." (*Id.*) While this is a true statement in that the timeliness of Neal's MRF-730 Grievance is determined by evaluating his compliance with the MDOC Policy, it adds no information whatsoever as to why the Court should deem that Grievance to have been timely filed.

11

In short, Neal has not provided sufficient support to create a material question of fact about the timeliness of his MRF-730 Grievance. *Matsushita*, 475 U.S. at 587 (the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial"). Accordingly, the claims raised in that Grievance were not "properly exhausted" against defendants Fronczak, Chapman, and Golson. Neal's claims in this case related to that Grievance are therefore subject to dismissal.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 16)** be **GRANTED**, and that all of Neal's claims in this case be **DISMISSED EXCEPT** for his claim against Fronczak arising out of the MRF-182 Grievance.

Dated: July 29, 2021            s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                United States Magistrate Judge

### REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.

*Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 29, 2021.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager