UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WESLEY NEAL, JR.,

                            Plaintiff,           Civil Action No. 20-12498

v.                                          Linda V. Parker
                                              United States District Judge

N. FRONCZAK, et al.,                    David R. Grand
                                              United States Magistrate Judge

                            Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT FRONCZAK'S MOTION FOR SUMMARY JUDGMENT (ECF No. 51)

*Pro se* plaintiff Wesley Neal, Jr. ("Neal"), an incarcerated person, commenced this action against Michigan Department of Corrections ("MDOC") employees, alleging he was denied access to the prison law library. Specifically, Neal alleges that in retaliation for threatening to file a grievance against the sole remaining defendant in this case, assistant librarian, Norbert Fronczak ("Fronczak"), he was issued a fraudulent misconduct report that resulted in him being denied access to the law library. (ECF No. 1).

On April 29, 2022, defendant Fronczak filed a Motion for Summary Judgment. (ECF No. 51). Neal filed a response to this motion, and Fronczak filed a reply. (ECF Nos. 53, 54). Neal also filed a sur-response. (ECF Nos. 57, 58). This case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 17). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is

in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing.

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that defendant Fronczak's Motion for Summary Judgment **(ECF No. 51)** be **GRANTED IN PART AND DENIED IN PART**.

## II.   REPORT

### A.   Background

#### i.   Neal's Complaint[1]

Neal, who is a prisoner currently confined at the MDOC's Macomb Correctional Facility ("MRF"), brings this civil rights action against Fronczak, alleging that Fronczak retaliated against him for threatening to file a grievance and denied him access to the courts, in violation of his First Amendment rights.  Neal alleges that "from approximately April 2019 until January of 2020," Fronczak subjected him to a "constitutionally intolerable campaign" of "unreasoned, arbitrary, capricious" acts of "harassment."  (ECF No. 1, PageID.2).  He alleges that, "[a]fter informing [] Fronczak that he would be writing a grievance [against Fronczak]" for such "unprofessional treatment," Fronczak "expelled [him] from law library use for 60 consecutive days" and denied him "adequate law library [use] with access to persons actually trained at law."  (*Id.*).

---

[1] On February 22, 2022, the Court dismissed all of Neal's claims except for his claims against Fronczak arising out of his grievance in MRF-20-02-182-14e (the "MRF-182 Grievance"), *i.e.*, acts of retaliation for protected conduct that resulted in Neal being denied his access to the prison law library.  (ECF No. 40).  The Court will limit its discussion of the facts accordingly.

Specifically, Neal alleges that, on January 29, 2020, Fronczak sent him a "letter/memorandum," which stated that Neal had engaged in an unspecified Class II misconduct inside the law library, and was therefore "temporarily barred from further access to [the] library pending the hearing on the misconduct." (*Id.*, PageID.3; *see also id.*, PageID.7). However, Neal contends that he had "never engaged in any conduct in the main law library for which a [] misconduct was written," "never had any misconduct written on him," and "did not have any session terminated nor [] required to leave the library." (*Id.*). Rather, he alleges that "[t]his whole expulsion from [the] law library was retaliation for [his] telling [] Fronczak that if he continued to be harassed [] he would write a grievance on [] Fronczak." (*Id.*) ("Without receiving any misconduct Plaintiff was barred from law library for 60 consecutive days for no apparent reason other tha[n] harassment and retaliation for informing Library Assistant N. Fronczak that a grievance would be written against him."). As a result of the ban, Neal was allegedly "forced to forgo advancement of his direct appeal, and proper assistance with preparing his Federal Habeas Corpus brief and motion for the court." (*Id.*, PageID.4). Neal seeks money damages, as well as declaratory and injunctive relief "directing Defendants to make [him] whole by affording him his constitutional rights." (*Id.*).

ii.   Summary Judgment Evidence

The January 29, 2020 MRF Memorandum from Fronczak to Neal, with the subject line "Misconduct per P.D. 05.03.110 and 05.03.115" (the "Misconduct Memo"), states:

> Per P.D. 05.03.115 - "Law Libraries," . . . under **Prisoner Misconduct**, item Z:

3

> *A prisoner who engages in conduct in the main library for which a Class I or Class II misconduct will be written shall have that session terminated and be required to leave the library; the prisoner also may be temporarily barred from further access to the library pending the hearing on the misconduct.  If the prisoner is found guilty of the misconduct, he may be barred from further access to the library; in such cases, items from the required law library collection shall be brought to the prisoner in the same manner as for segregation prisoners.*

> *Per P.D. 05.03.110 - "Institutional Library Services" . . . under **Library Accessibility**, item J:*

> A prisoner who engages in behavior in the library for which a Class I or Class II misconduct will be written shall have that session terminated and be required to leave the library; the prisoner may be temporarily barred from further access to the library pending the hearing. . . . If the prisoner is found guilty of the misconduct, he may be barred from further access to the library for a reasonable time period as determined by the Warden or designee; law library materials shall be provided as set forth in PD 05.03.115 "Law Libraries."

> You are barred from the library pending a guilty finding of your misconduct ticket.  If you are found guilty you will be suspended from the library for 60 days starting Wednesday, 1-29-2020 thru 3-28-2020.

> During this sanction you may use the Legal Writer Program if you have pending legal work with substantial documentation.  To request legal materials – use the segregation forms attached.  Per the above policies you will receive services as if you were in segregation.

(ECF No. 1, PageID.7) (emphasis in original).

The January 29, 2020 MDOC Misconduct Report reflects that Fronczak charged Neal with a Class II misconduct for a violation of "436 Out of Place" (the "Misconduct Report").  (ECF No. 51-4, PageID.449).  The Misconduct Report states:

> The prisoner Neal repeatedly places kites in for callouts to attend law library but doesn't show up for some of the days scheduled.  Law library attendance is mandated as per MRF O.P. 05.03.115, "LAW LIRBARY CALLOUTS ARE MANDATORY.  Disciplinary action will be taken for NO SHOWS."  Not showing up for his Law Library callout makes

him Out of Place.  His attached itinerary demonstrates that he has no conflicts with attending law library.  I recognize the prisoner from his usage of the library & his OTIS MDOC ID.

(*Id.*) (emphasis added).  The referenced "itinerary" is not in the record.

MRF Operating Procedure ("OP") 05.03.115, entitled "Law Libraries," states, "**LAW LIBRARY CALLOUTS ARE MANDATORY.**  Disciplinary action will be taken for NO SHOWS."  (ECF No. 51-11, PageID.484) (emphasis in original).

A copy of Neal's library kite reflects that he checked off the line for "Request for see a Legal Writer" and wrote next to it, "Soon as Possible."  (ECF No. 1, PageID.9).

A MRF Memo from the Legal Writer Program ("LWP") to Neal on February 4, 2020 (the "LWP Memo"), states:

> This Memo is in response to your kite/application that was received by the Legal Writer Program on February 4, 2020.
>
> **WE REGRET TO INFORM YOU** that because you possess a verified GED/High School Diploma, and Health/Mental Care Services has **NOT** verified that you have a physical or mental disability THAT WOULD PREVENT YOU FROM USING THE RESOURCES AVAILABLE IN THE LAW LIBRARY, the requirements for legal writer assistance have **NOT** been met and as a result you are **INELIGIBLE** for the requested assistance.
>
> **PLEASE BE ADVISED** that if you have a pressing legal problem, or court ordered deadline, you are advised to submit a kite to the Library requesting an appropriate law library call-out.  You are capable and responsible enough to assist yourself with your legal needs.

(ECF No. 1, PageID.10) (emphasis in original).  Notably, next to the "From:" line at the heading of the memo, there is a handwritten signature with the initials "J L."  (*Id.*).

The MRF-182 Grievance shows that Neal filed it on February 10, 2020, against Fronczak for the alleged retaliatory incident that took place on January 29, 2020.  (ECF

5

No. 16-3, PageID.125).  Neal grieved that he was "kick[ed] out" or "suspended" from the law library by Fronczak "for informing [Fronczak] he was filing a grievance [against Fronczak] for harassment."  (*Id.*).  Neal asserted that he "never had any misconduct report," was never "found guilty of any such charges," and that the law library ban was a "denial of access to the court."  (*Id.*).  The grievance stated that Fronczak told him "if [he] stop[s] filing grievances [Fronczak will] allow him to return to the law library."  (*Id.*).

A Step I response from Librarian J. Luzius for the MRF-182 Grievance states:

> I interviewed Neal on 2/13/2020.  I told him since his ticket was reduced to counseling he is free to sign up for law library.  I asked him what days he would like and he said he would "select his days on his own time."  Mr. Fronczak never talked to him about any grievances.  Grievance resolved.

(ECF No. 16-3, PageID.125).  Neal appealed to Step II, stating that "[t]his issue has not been resolved at Step I" because he "never received a misconduct ticket or counseling reprimand prior to being prematurely suspended from [the] law library or after being suspended," and that he "did inform [] Fronczak that [he] would be filing a grievance prior to [Fronczak] 'kicking [him] out' (suspending [his] law library use) from the law library."  (*Id.*, PageID.123).  After the Step I denial was upheld at Step II, (*id.*, PageID.124), Neal appealed the grievance to Step III, again asserting that the issue was never resolved because Fronczak retaliated against him by suspending him from the law library "without any reason/misconduct" in retaliation "for informing [Fronczak] he would be filing a grievance for [Fronczak's] unprofessional conduct in the way [Fronczak] was talking to [him]."  (*Id.*,

PageID.123).  The Step III appeal was denied on April 1, 2020.  (*Id.*, PageID.122).[2]

At deposition, Neal testified that he has never missed any mandatory call outs for the law library while at MRF, and "make[s] it a priority to make [his] call outs" because he was "not going to deny[] [himself] any chance to get into the law library to do some research."  (*Id.*, PageID.420-21).  He testified that his records would confirm that he had not "missed any mandatory call out."  (*Id.*, PageID.421).  When Librarian Luzius "tried to tell [Neal]" at the grievance review for MRF-182 that "it's just been reduced to a counseling reprimand," Neal responded, "[N]o, it [has not] because there was no ticket written on me for it to be a counseling reprimand and I didn't have a counseling reprimand."  (*Id.*, PageID.422).  Luzius "wanted [Neal] to sign off on the grievance" to confirm that "the problem has been settled."  (ECF No. 51-2, PageID.390).  Neal refused because "[t]he problem was not settled," but Luzius told him that "if [he] sign[s] off [on the grievance] [he] can go back to the law library."  (*Id.*).

Neal testified that, during his expulsion, he had "pending legal work" because he "had just got denied [his] 6500 [state court relief from judgment] motion" and he "was going to go through federal habe[as]."  (*Id.*, PageID.423).  Neal submitted a kite to request assistance from the LWP, but Fronczak denied his request, despite the Misconduct Memo stating he could use the LWP during his ban.  (*Id.*, PageID.425-26).  Neal testified that

---

[2] Neal supplies an affidavit and gave deposition testimony that is generally consistent with his allegations in the MRF-182 Grievance.  (ECF No. 1, PageID.29-31; ECF No. 51-2, PageID.391-92, 397-98).  Neal also testified that on one occasion during his ban Fronczak told him that "if [he] quit filing grievances [he] can come back to the law library."  (ECF No. 51-2, PageID.411-12 ("if you stop writing grievances then you'd be allowed to come back to the law library")).

"those 60 days that [he] couldn't go to the law library hindered [him] from getting [his] federal [habeas] in on time," and "that's why [he] needed the . . . assistance from a legal writer." (*Id.*, PageID.437).  He never filed that federal habeas petition because he "ran out of time," but he "can't exactly say" when the deadline expired because he did not "have the information with [him]." (*Id.*, PageID.438).

Finally, Fronczak also provides his own affidavit, in which he attests that, "[i]n order to attend the law library, inmates ha[ve] to submit kites requesting days in which they want[] to attend." (ECF No. 51-5, PageID.452).  Inmates are then scheduled for "callouts" for days they are approved, and these library callouts are "mandatory." (*Id.*).  "Failure to attend a mandatory 'callout' ma[kes] the inmate 'out of place' and subject to disciplinary action." (*Id.*).  As to the incident with Neal, Fronczak attests that "Neal had submitted kites to attend the law library and did receive mandatory 'callouts' to attend . . . but failed to show on multiple mandatory 'callout' dates for the law library in January 2020." (*Id.*).  "As a result of [] Neal's failure to show to a mandatory 'callout' he was issued a misconduct ticket on January 29, 2020, and was advised of such." (*Id.*, PageID.453).  Fronczak attests that "Neal never told [him] that [Neal] was going to grieve [him] for any reason prior to the issuance of the misconduct ticket on January 29, 2020." (*Id.*).  Neal "did submit a kite for use of the Legal Writer Program," but such request was denied because Neal "did not meet the eligibility requirements for the program." (*Id.*).

Defendant Fronczak now moves for summary judgment on Neal's claims against him, arguing that such claims fail as a matter of law and that Fronczak is entitled to Eleventh Amendment and qualified immunity.

**B.      Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

9

### C.     Analysis

### **First Amendment Retaliation**

A prima facie case for First Amendment retaliation involves three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff "likely to chill a person of ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

In seeking summary judgment, Fronczak argues that Neal's claim fails as a matter of law because Neal failed to satisfy *any* of the three prongs of a First Amendment retaliation claim.  For the reasons detailed below, the Court disagrees.

### 1.  Protected Activity

As to the first prong, "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Importantly, however, "[n]othing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (quoting *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity)).  As the Sixth Circuit has explained, "[a]n inmate has a right to file 'non-frivolous' grievances against prisoner officials on his own behalf, whether written or oral . . ." *Id.* (citations and quotations

omitted).  Indeed, the Sixth Circuit has found that a prisoner engaged in protected conduct where he threatened to file a legitimate grievance.  *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009).

Fronczak argues that Neal "was not engaging in any protected activity for which he could claim retaliation" because Neal "did not engage in filing [the MRF-182 Grievance] until fourteen days after [] Fronczak wrote [Neal] a misconduct ticket for failing to attend his mandatory law library callouts."  (ECF No. 51, PageID.351).  Such argument is misguided, as Fronczak mistakenly points to the MRF-182 Grievance as the underlying protected conduct for Neal's retaliation claim when in reality Neal alleged that Fronczak retaliated against him *on January 29, 2020* after Neal told Fronczak that he was going to file a grievance regarding Fronczak's harassing and threatening conduct during library sessions that took place *before* January 29, 2020.  (*See, e.g.*, ECF No. 1, PageID.3 ("This whole expulsion from [the] law library was retaliation for Plaintiff telling [] Fronczak that if he continued to be harassed that he would write a grievance on [] Fronczak.  Without receiving any misconduct Plaintiff was barred from law library [] for no apparent reason other tha[n] harassment and retaliation for informing [] Fronczak that a grievance would be written against him.")).  Thus, it is immaterial that the MRF-182 Grievance was written *after* Fronczak issued the Misconduct Report on January 29, 2020, and the salient question here is whether Neal's act of informing Fronczak *before* he was issued the Misconduct Report that he would be filing a grievance constitutes protected activity.  Viewing the evidence and drawing all reasonable inferences in the light most favorable to Neal, the Court answers that question in the affirmative.

11

According to Neal's affidavit and deposition testimony, between April 2019 and January 2020, Fronczak subjected him to "excessive harassment" at the law library and, on numerous occasions, "threatened" to "terminate" his library sessions and/or "expel" him from accessing the library altogether.  (ECF No. 1, PageID.29-30; *see, e.g.*, ECF No. 51-2, PageID.391-92).   Sometime prior to being issued the Misconduct Report, Neal "informed" Fronczak that he would be filing a grievance against Fronczak regarding such harassment.  (ECF No. 1, PageID.31; ECF No. 51-2, PageID.397-98 ("I asked him to please stop harassing me.  I said if this harassment continues I'll be forced to write a grievance. . . . And, well, I tell him that I'm going to write a grievance.  He told me he don't care about grievances, they don't do nothing to him, and . . . I told him I was going to write the grievance, for him to be expecting one.")).   But before Neal could write that grievance, Fronczak sent him the Misconduct Memo on January 29, 2020, informing him that he had been issued a Class II misconduct, *i.e.*, the Misconduct Report, and was therefore temporarily barred from the law library pending a hearing on that charge.  (ECF No. 51-2, PageID.398 ("Before I even wrote the grievance I was barred from the law library for no apparent reason, no reason at all . . . [Fronczak] sent me a memo of why I was barred from the library . . . [on] Wednesday, January 29th, 2020.")).   Neal also testified that, during his temporary ban from the library, Neal was "on [his] way to the yard" when he ran into Fronczak, who told him that he could come back to law library if he stopped filing grievances.  (ECF No. 51-2, PageID.412).

Based on the above, at this stage, Neal has presented sufficient evidence that he was engaged in protected conduct when he complained to Fronczak about Fronczak's alleged

harassment and threats between April 2019 and January 2020, and then informed Fronczak prior to being issued the Misconduct Report on January 29, 2020, that he would be filing a grievance.  *See Holzemer*, 621 F.3d at 521; *Pasley*, 345 F. App'x at 985.[3]

> 2.  Adverse Action

"[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake."  *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)).  "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact."  *Id.* (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).  However, some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury.  *Id.*  "[T]his threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment."  *Thaddeus–X*, 175 F.3d at 398.  Indeed, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury."  *Maben*, 887 F.3d at 266 (quoting *Bell*, 308 F.3d at 603); *see also Kennedy v. Bonevelle*, 413 F. App'x. 836, 840 (6th Cir. 2011) ("[O]nly *de minimis* violations should be dismissed as a matter of law; in general, the adverseness question should survive the pleading stage.").  "When deciding whether the issuance of a misconduct ticket rises to the

---

[3] While Fronczak argues that "[Neal's] assertion that he told [] Fronczak that [Neal] was going to grieve him is an unsubstantiated self-serving statement" (ECF No. 51, PageID.351), Neal swore in his affidavit and deposition that he "informed" Fronczak that he would file a grievance, and at the summary judgment stage, the Court must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

level of an adverse action, [the Sixth Circuit] look[s] to both the punishment [plaintiff] could have faced and the punishment he ultimately did face." *Maben*, 887 F.3d at 266; *see also Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (looking to what the prisoner "could have been sentenced to ... if he had been found guilty").

In his motion, Fronczak argues that Neal's contention that he "suffered the adverse action of being 'expelled' from the law library" is "not accurate" because Neal "was not found guilty [of a Class II misconduct] . . . and thus did not [actually] suffer a sixty-day suspension." (ECF No. 51, PageID.353). Fronczak also contends that, on February 13, 2020, Neal's "misconduct ticket had been reduced to counseling and that he was free to sign up for the law library at any time," so Neal "at most, was unable to physically attend the law library for fifteen days." (*Id.*, PageID.354). Finally, Fronczak contends that, even during the temporary ban, Neal still maintained the ability to "obtain access to legal items as if he were in segregation." (*Id.*, PageID.354-55).[4]

In response, Neal argues that, in this case, "the facts ***involve the bringing of [a] false misconduct claim*** by Defendant Fronczak in retaliation for [his] exercise of a First Amendment Right," and that "the evidence supports a claim that ***Fronczak intentionally***

---

[4] To the extent Fronczak argues that the "suspension clearly did not deter Neal from exercising his First Amendment rights as Neal continued to file grievances and this present lawsuit" (ECF No. 51, PageID.354-55), such argument lacks merit, as the adverse action prong of a First Amendment retaliation claim is analyzed under an objective standard. *Maben*, 887 F.3d at 266 (analyzing whether an adverse action would "deter a person of ordinary firmness" from the exercise of the right at stake); *Thaddeus-X*, 175 F.3d at 398 (second prong is an "objective inquiry").

***and maliciously fabricated a claim against [him] in retaliation for [his] informing
[Fronczak] of the grievance that he would write*** if [Fronczak's] harassment [of him]
continued."  (ECF No. 55, PageID.508 (emphasis added)); *see also* (*id.*, PageID.512
("Defendant tried to cover his deceit by claiming that he had written a misconduct report
on Plaintiff.")).  Neal contends that Fronczak "can produce no evidence that he missed a
law library callout [that would] merit barring [him] from [the] law library," and that
Fronczak's exhibit of the Misconduct Report "is a fraudulent document that he concocted
after being notified that he was being sued."  (*Id.*, PageID.499, 506).

In his reply, Fronczak argues that while Neal "claimed there was never a misconduct
ticket issued," Fronczak "provided proof of its existence in its motion for summary
judgment," and though Neal "did submit various exhibits . . . no submitted exhibit provides
any evidence of wrongdoing by [] Fronczak" and "are either irrelevant or support the
assertions made by [] Fronczak."  (ECF No. 56, PageID.546-49).[5]

Here, viewing the evidence and drawing all inferences in the light most favorable
to Neal, there exist questions of material fact as to whether Fronczak issued a false
misconduct report against Neal in retaliation for Neal's threatening to file a grievance
against Fronczak.  To start, Fronczak's reliance on the Misconduct Report is appropriate

---

[5] To the extent Fronczak focuses on Neal's temporary ban from the law library as the "adverse
action" and asserts that such ban was imposed "pursuant to policy," the salient retaliatory action
at issue here is Fronczak's issuance of a Class II misconduct ticket, which *resulted* in Neal's
temporary ban from the law library pending a hearing on that charge pursuant to policy.  Put
differently, in response to Neal's protected conduct of informing Fronczak that he would file a
grievance, the alleged retaliatory action was Fronczak's issuance of the Misconduct Report, and
the temporary ban from the law library was merely the punishment or sanction that Neal faced
under policy as a result of that Misconduct Report.

only to the extent it shows that he **wrote and issued** a Class II misconduct ticket against Neal on charges of a "436 Out of Place" violation, but the mere existence of that Misconduct Report does not establish the merits of its underlying charges.  In other words, evidence that Fronczak wrote the Misconduct Report charging Neal with a violation is not evidence demonstrating that such a violation actually occurred.  This distinction is particularly significant where Neal's primary claim is that Fronczak "intentionally and maliciously fabricated" these charges in retaliation for Neal threatening to file a grievance.

It is also worth noting that the Misconduct Report itself is full of ambiguity. Specifically, the report, which lists a "Violation Date" of 1-29-20," states:

> The prisoner Neal **repeatedly places kites in for callouts** to attend law library but doesn't show up for **some of the days scheduled**. . . . Not showing up for his Law Library **callout** makes him Out of Place.  His attached itinerary demonstrates that he has no conflicts with attending law library.

(ECF No. 51-4, PageID.449) (emphasis added).  On its face, it is unclear whether Neal was charged for "repeatedly" missing *multiple callouts* for "some of the days scheduled," or with missing *one specific callout* that had purportedly been scheduled for January 29, 2020, or both.  The "attached itinerary" referenced in the Misconduct Report also has not been submitted as part of the evidence.  Moreover, Fronczak's affidavit fails to provide clarity or specificity as to the Class II misconduct charge, as Fronczak similarly attests in vague terms that "Neal failed to show on **multiple mandatory 'callout' dates** for the law library in January 2020," but that "[as] a result of [] Neal's failure to show to **a mandatory 'callout'** he was issued a misconduct ticket on January 29, 2020, and was advised of such."  (ECF No. 51-5, PageID.452-53) (emphasis added).

16

Indeed, there is otherwise no evidence in the record establishing the dates and times for *any* of Neal's scheduled library callouts, much less that Neal was ever a "no show." To the contrary, Neal provides sworn testimony that he never missed mandatory callouts while at MRF, and Fronczak presents no evidence establishing that Neal actually missed a callout. (ECF No. 51-2, PageID.420 (deposition testimony stating, "Q. [] Have you missed call outs that were mandatory at [MRF]? . . . A. No. . . . I make it a priority to make my call outs. . . . Q. Okay. *So if I pulled out call outs for any period of time I wouldn't notice that you had missed any mandatory call out? A. None. Not any.*") (emphasis added)).[6] Finally, Fronczak himself acknowledges that "Librarian J. Luzius met with [Neal] on February 13, 2020, and spoke with [Neal], advising [Neal] that **his misconduct ticket had been reduced to a counseling and that he was free to sign up for the law library at any time.**" (ECF No. 51, PageID.353-54). Fronczak provided no details as to why Librarian Luzius overrode the Class II misconduct and instead reduced it to "counseling." Drawing all reasonable inferences in Neal's favor, one could reasonably infer that there was no merit to the charges in the Misconduct Report.

Based on the above, at this stage, material questions of fact remain as to whether Fronczak issued Neal a fraudulent misconduct report in retaliation for protected conduct. And, the law is clear that such issuance of a fraudulent misconduct report in retaliation for

---

[6] Neal also provides a second affidavit in his sur-reply attesting that, between May 2022 and June 2022, he contacted and spoke to MDOC employees "Hearing Investigator Bridges," "P.C. Maclean," and "P.C. Harriston" requesting for a search of his "file for any Class I and Class II misconduct reports [] dated after December 2019," and he was told that "there was no misconduct in [his] file after 2010." (ECF No. 57, PageID.557).

protected activity sufficiently constitutes an adverse action. *See, e.g.*, *Scott v. Churchill*, 377 F.3d 565, 571-72 (6th Cir. 2004) ("*Cale [v. Johnson*, 861 F.2d 943 (6th Cir. 1988)] clearly establishes that the mere potential threat of disciplinary sanctions is sufficiently adverse to support a claim of retaliation.").

        3. Causation

        Fronczak argues that "there is no evidence that demonstrates the required causal connection" because Neal "filed [the MRF-182 Grievance] fourteen days after he was given notice of his temporary suspension . . ." (ECF No. 51, PageID.359-60). Fronczak also contends that he "would have issued [Neal] a misconduct ticket for failing to show for mandatory callouts, even if [Neal] did not file any grievances." (*Id.*, PageID.360).

        In response, Neal argues that "[t]he causal link between the protected conduct and [his] temporary suspension from the law library happened when [he] was barred from the law library for no other reason except as punishment for informing [] Fronczak that there was going to be a grievance written on him . . . [and] [Fronczak] tried to cover his deceit by claiming that he had written a misconduct report[.]" (ECF No. 55, PageID.512).

        Generally, "the question of causation is a factual issue to be resolved by a jury, and may be satisfied by circumstantial evidence." *Harris v. Bornhorst*, 531 F.3d 503, 519-20 (6th Cir. 2008) (citing *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996)). "Nonetheless, a court may grant summary judgment even in a causation inquiry, where it is warranted." *Maben*, 887 F.3d at 267 (quoting *Hartsel*, 87 F.3d at 803). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus–X*, 175 F.3d at 399. "If the

18

defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*.

Fronczak fails to meet that burden here because, as detailed above, there remain material factual questions as to whether Neal missed any mandatory library call outs that would warrant the issuance of a Class II misconduct. It is axiomatic that Fronczak cannot show he would have issued the Misconduct Report for failing to show up to mandatory library callouts without first presenting evidence that Neal, in fact, had missed any such callouts. Thus, Fronczak has "done little more than deny the allegations put forth by" Neal, which is insufficient to meet his burden. *Thaddeus-X*, 175 F.3d at 399.

In sum, for all of the foregoing reasons, Neal introduced sufficient evidence to create a genuine issue of material fact as to his First Amendment retaliation claim. Consequently, Fronczak is not entitled to summary judgment on that claim.[7]

### 4. Immunity

Finally, Fronczak argues that he is entitled to Eleventh Amendment immunity on Neal's officially capacity claims, and qualified immunity on his individual capacity claims.

---

[7] To the extent Neal seeks to raise a First Amendment retaliation claim based specifically on the denial of his request for assistance from the LWP, such claim was not exhausted in MRF-182, which does not even mention the LWP or legal assistance at any step of the three-step grievance process. (*See* ECF No. 16-3, PageID.123-25; ECF No. 30 (R&R recommending "all of Neal's claims in this case be **DISMISSED EXCEPT** for his claim against Fronczak arising out of the MRF-182 Grievance") (emphasis in original); ECF No. 40 (adopting R&R)). At any rate, such claim fails as a matter of law. The LWP Memo denying Neal's request shows that it was signed off by *Librarian Luzius*, and *not Fronczak*, as it clearly reflects the written signature initials of "J L" for J. Luzius. (ECF No. 1, PageID.10); *see Baker v. McCollan*, 443 U.S. 137 (1979) (stating that in order to demonstrate liability under § 1983, a plaintiff must first establish that *each named defendant* acted under color of state law and that *his* actions violated rights secured by the Constitution and/or laws of the United States).

As to official capacity claims, the Eleventh Amendment prohibits suits in federal court against the state or any of its agencies or departments unless the state has waived its sovereign immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Relevant to this case, the Sixth Circuit has specifically held that MDOC employees are entitled to sovereign immunity from a plaintiff's official capacity § 1983 claims:

> Because sovereign immunity extends to state instrumentalities, and the MDOC is an arm of the State of Michigan, the MDOC is entitled to sovereign immunity on the § 1983 claim as well. Moreover, the named Defendants, in their official capacities, are similarly entitled to immunity with respect to [Plaintiff's] § 1983 claim because a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, which is no different from a suit against the State.

*McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010) (internal citations and quotations omitted). However, Eleventh Amendment immunity does not apply where the plaintiff's "suit against a state official seek[s] prospective injunctive relief to end a continuing violation of federal law." *See Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002) (citations omitted); *see also Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) ("a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (quotations omitted).

Here, because Neal's complaint seeks only money damages, the law is clear that Eleventh Amendment immunity applies to his official capacity claims against Fronczak as a state official of the MDOC. *Pennhurst State School & Hosp.*, 465 U.S. at 99; *McCoy*, 369 F. App'x at 653-54. To the extent Neal's complaint contains what appears to be a

boilerplate request for relief seeking an "injunctive order directing Defendants to make Plaintiff whole by affording him his constitutional rights," such a vague and conclusory request falls well short of alleging "an ongoing violation of federal law and [a request for] relief properly characterized as prospective." *Stewart*, 563 U.S. at 255. Thus, Neal's official capacity claims should be dismissed as barred by the Eleventh Amendment.

As to Neal's individual capacity claims, Fronczak argues in cursory fashion that "[h]ere, there is no clear rights violations by Defendant Fronczak," and so "Fronczak is entitled to qualified immunity to the remaining First Amendment claims against him." (ECF No. 51, PageID.366). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether government officials are entitled to qualified immunity, courts must consider: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Chappell v. City Of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). On this record, Neal has presented sufficient evidence that, when viewed in the light most favorable to him, creates a genuine issue of material fact as to whether Fronczak issued him a fraudulent misconduct report in retaliation for his protected conduct in violation of a clearly established constitutional right.

As to the first prong, the Court must "assume the truth of all record-supported allegations by the non-movant," *Bays v. Montmorency Cty.*, 874 F.3d 264, 268 (6th Cir. 2017), and "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).  As detailed above, Neal has introduced evidence raising material factual questions as to whether Fronczak's issuance of the Misconduct Report was fraudulent and in retaliation for Neal threatening to file a grievance against him.

As to the second prong, the Sixth Circuit "has repeatedly recognized that if a prison officer retaliated against [a prisoner] for filing grievances, the alleged conduct also comprises a violation of clearly established constitutional law.  *Maben*, 887 F.3d at 270 ("[W]e think that a reasonable prison officer would have been aware that issuing a misconduct ticket, even a minor misconduct ticket, in retaliation for the inmate's exercise of his Frist Amendment rights could give rise to constitutional liability."); *see also King v. Zamiara*, 150 F. App'x. 485, 493 (6th Cir. 2005) ("Charging an inmate with misconduct is an adverse action because serious consequences can flow from erroneous charges."); *Scott*, 377 F.3d at 572 (finding it clearly established that "the false issuance of a misconduct charge is unconstitutional retaliation").

Accordingly, Fronczak is not entitled to qualified immunity on Neal's individual capacity claims against him.

### **Access to Courts**

Fronczak argues that Neal's access-to-courts claim fails as a matter of law because "he has not alleged he suffered any actual injury."  (ECF No. 51, PageID.363).  Neal did

not address this argument head-on in his response brief.  Regardless, Fronczak is correct.

To state a viable access-to-courts claim, a prisoner must show he suffered an "actual injury"

as a result of the defendant's actions.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The

Supreme Court has strictly limited the types of cases for which an "actual injury" exists:

> *Bounds* does not guarantee inmates the wherewithal to transform
> themselves into litigating engines capable of filing everything from
> shareholder derivative actions to slip-and-fall claims.  The tools it
> requires to be provided are those that the inmates need in order to attack
> their sentences, directly or collaterally, and in order to challenge the
> conditions of their confinement.  Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional)
> consequences of conviction and incarceration.

*Id.* at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas

corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378,

391 (6th Cir. 1999) (*en banc*).

To satisfy the actual injury requirement, the underlying action must assert *a non-

frivolous claim.  Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th

Cir. 1999).  The Supreme Court has squarely held that "the underlying cause of action . . .

is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403,

415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access

claim, the underlying cause of action and its lost remedy must be addressed by allegations

in the complaint sufficient to give fair notice to a defendant."  *Id.*  "To meet these

requirements, Plaintiff must demonstrate (1) the loss of a nonfrivolous and arguable claim

that is more than a mere hope; (2) Defendants' acts that caused the loss of his nonfrivolous

claim; and (3) a remedy that is awardable as recompense but not otherwise available in a lawsuit that may yet be brought."  *Nguyen v. Floyd*, No. 22-11628, 2022 WL 3045000, at *3 (E.D. Mich. Aug. 2, 2022) (citations and quotations omitted).

Here, Neal fails to assert facts, much less present evidence, demonstrating that he suffered an "actual injury."  While he broadly contends that he lost out on the opportunity to file a "federal habeas appeal," he asserted no facts whatsoever demonstrating that such habeas appeal contained a non-frivolous claim.  *See Nguyen*, 2022 WL 3045000, at *3; *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) ("[T]o prevail, [plaintiff] must prove [defendants] prevented him from pursuing a legitimate legal claim.").  Indeed, Neal's deposition testimony reflects that he could not even provide the exact filing deadline for that habeas appeal, let alone any details about its underlying merits other than that it was to appeal "the denial of a 6500 motion."  (ECF No. 51-2, PageID.423, 438).

Accordingly, Neal's access-to-the-courts claim fails as a matter of law, and summary judgment should be granted on this claim.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that defendant Fronczak's Motion for Summary Judgment **(ECF No. 51)** be **GRANTED IN PART** as to Neal's First Amendment access-to-courts claim, as well as his official capacity claims, but **DENIED IN PART** as to Neal's First Amendment retaliation claim against Fronczak in his individual capacity based on his issuance of the disputed misconduct report.

Should this recommendation be adopted, Neal's only remaining claim will be his

First Amendment retaliation claim against Fronczak in his individual capacity.

Dated: December 7, 2022  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 7, 2022.

<div align="center" style="margin-left:40%">

<u>s/Michael E. Lang</u>
MICHAEL E. LANG
Case Manager

</div>